IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KALVIN[1] BRUNELLE,

        Petitioner,

   v.

BRIAN BELLEQUE, Superintendent,
Oregon State Penitentiary Minimum,

       Respondent.

Civil No. 03-1027-BR

OPINION AND ORDER

    **FRANCESCA FRECCERO**
    Assistant Federal Public Defender
    101 SW Main Street, Suite 1700
    Portland, OR  97204

        Attorney for Petitioner

---

[1] The court record lists Petitioner's name as "Calvin" based on the spelling of his name in the original Petition. Counsel for Petitioner notes, however, that the correct spelling is "Kalvin." Accordingly, the Clerk of the Court is DIRECTED to correct the court record to reflect the accurate spelling of Petitioner's name.

**HARDY MYERS**
Attorney General
**YOULEE YIM YOU**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

        Attorneys for Respondent

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus.

### BACKGROUND

Petitioner committed a series of residential burglaries in North Portland in October of 1995.  He was arrested on October 24, 1995, and charged with five burglaries.  Petitioner admitted he committed four of the burglaries, but asserted his innocence of a robbery and residential burglary which occurred on October 12, 2005.

The victim of the October 12, 2005, robbery and burglary was Robert Davis, a 25-year old man who lived with his mother and stepfather.  At 8:30 p.m. that night, Davis and his mother pulled into the driveway of their home, and heard a bottle breaking on the side of the house.  Davis then saw someone trying to climb out a window by breaking the storm window from the inside.

Davis took his mother to a neighbor's yard, then ran back to his house. There, he saw a man climbing out of a different window of the house. The man was carrying a wooden rod that was three and one-half to four feet long. The man passed Davis in the driveway and raised the wooden rod at him. The man threatened Davis, and then fled. Davis pursued him through the neighborhood, but did not catch up to him before police, who had been called by the neighbor, stopped Davis.

It was dark outside when the incident occurred. Davis testified, however, that there were two yard lights in the driveway and a flood light on the garage which illuminated the entire driveway. Another light, located in a breeze way between the garage and house, had been unscrewed and set upon a table.

That night, Davis described the suspect to police as a white man with long, dark hair and a dark complexion, approximately 5'10" to 5'11" and 150 pounds. On November 2, 1995, a detective showed Davis a photographic throw-down that included a picture of Petitioner taken twelve days after the incident on October 24, 1995, when Petitioner was arrested. In that photograph, Petitioner has short hair. Davis told the detective that the suspect had longer hair. He described the suspect's hair as "long, shoulder-length, greasy." The detective instructed Davis that some characteristics may have changed, and that he should

make his identification based on his recollection of the suspect's face.  Davis picked out Petitioner's photo.

At trial to the court, Davis pointed to Petitioner as the man he saw on October 12.  Davis also testified that Petitioner's hair had been longer at the time of the burglary.  He said the suspect's hair was "shoulder length," and "kind of laying on his shoulders."

On cross-examination, Davis admitted that he told the responding police officer that he only was able to see the suspect's face when he turned in the driveway.  In court, however, he said he could always see the suspect's face, and it simply became brighter as the suspect approached him, because of the lighting.  Davis denied he told the responding officer the suspect weighed only 150 pounds.

Petitioner's attorney called the responding police officer, Officer Seid, as a witness.  Officer Seid testified that Davis told him he first confronted the suspect approximately four blocks from the residence, after pursuing him.  Officer Seid also confirmed Davis told him the suspect weighed approximately 150, not 180 pounds.  Petitioner's attorney also offered Multnomah County booking photographs of Petitioner from arrests on June 17, 1995, and October 24, 1995, both of which showed Petitioner with short hair.

In closing, the prosecutor argued the court should accept Davis' identification of Petitioner because the inconsistencies in his statements were insignificant and did not indicate unreliability. As to the booking photographs, the prosecutor argued they did not establish how long Petitioner's hair was on the date of the burglary and "whether or not he had a hair cut in between, we don't know, or a haircut in between the 12th and the 24th, we don't know."

Petitioner's attorney countered that the Davis burglary did not fit the *modus operandi* of the other burglaries Petitioner admitted to committing. Counsel also pointed out the inconsistencies in Davis' descriptions, emphasized that the photographic evidence proved Petitioner did not have long hair on October 12, and stated that the "haircut theory is preposterous."

The trial judge found Petitioner guilty. Petitioner did not directly appeal.

Petitioner did seek state post-conviction relief ("PCR"). He claimed he was denied effective assistance of counsel on the basis that his trial attorney failed to investigate the facts relating to the Davis incident, and failed to subpoena and call as a witness Clark County, Washington Sheriff's Detective John Visser, who would have impeached Davis' identification.

On September 18, 2001, Senior Judge George Van Hoomissen conducted a trial in the PCR proceeding. Evidence presented at

the PCR trial included the criminal trial transcript, Petitioner's deposition, and the testimony of Detective Visser.

Detective Visser testified he had worked for the Sheriff of Clark County as a detective for ten years. He testified he had known Petitioner since 1986, when Petitioner was in the juvenile detention center in Clark County and Visser was a juvenile detention officer. Detective Visser maintained contact with Petitioner over the years, and Petitioner was once arrested for attempting to enter Visser's house unlawfully. Detective Visser had worked with Petitioner's family in an effort to get Petitioner into a drug-treatment program.

Detective Visser testified that he personally knew Petitioner had short hair throughout September and October 1995. Recalling a specific visit, Visser testified that "approximately ten to twelve days prior to [Petitioner's] arrest on October 24, 1995," Visser had gone to see Petitioner. When asked to describe Petitioner's hairstyle at the time, Visser said he could "do better than that," and offered the October 24, 2005, booking photograph introduced at trial. Detective Visser said that the hairstyle shown in the photograph was Petitioner's hairstyle at the time he saw him around October 12, 1995, except for twelve days' growth. He testified that he had never known Petitioner to have "long, dark, greasy hair."

Detective Visser also testified about his contact with Petitioner's trial counsel. He testified that he talked to the attorney about Petitioner's hairstyle on the date of the alleged robbery, and twice told counsel he was willing and available to testify to those facts on Petitioner's behalf. The trial attorney, however, never sent an investigator to speak to him, never served him with a subpoena, and never asked him to testify at trial. Instead, the trial attorney told Visser his testimony "wouldn't be necessary."

Petitioner also testified at the PCR trial that he asked his attorney to contact Detective Visser. The attorney told Petitioner they "weren't going to need him," and that it was "an open and shut case" against Petitioner.

At the PCR trial, the state did not call the trial attorney to testify, or submit an affidavit from him. The state's attorney argued Detective Visser's testimony would have been cumulative, because it would not have added anything to the evidence of the booking photograph from October 24, 1995.

The PCR trial judge denied relief. He did not enter formal findings of fact or conclusions of law. Instead, at the close of trial, Judge Van Hoomissen said:

> THE COURT:    . . . [I]n effect what you're asking this Court to do is to second guess the trial Judge who heard the evidence several years ago. Nothing you've

> presented this morning would warrant
> this Court in doing so.
>
> * * *
>
> The Court finds that the Petitioner has
> failed to sustain his burden of proof
> and therefore that the formal petition
> for post-conviction relief should be
> denied.

Petitioner appealed the denial of PCR court's decision. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

On July 29, 2003, Petitioner filed his federal petition for writ of habeas corpus. Petitioner initially alleged numerous claims for relief. In his Memorandum in Support of Petition for Habeas Corpus Relief, however, Petitioner presents argument solely upon his claim that trial counsel was constitutionally ineffective for failing to investigate the mistaken identity defense and failing to call a witness who would have significantly impeached the state's identity witness. Petitioner concedes the remaining claims are either procedurally defaulted or were the subject of state court decisions entitled to deference.

## DISCUSSION

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication:   "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1172-75 (2003).

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000). An "unreasonable application of clearly established Federal law" occurs if a state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. *Williams*, 529 U.S. at 412; *Ramdass*, 530 U.S. at 166.

Under 28 U.S.C. § 2254(d)(2), this Court may also grant habeas relief if the state court's decision was based on an unreasonable determination of the facts in the state record. Before relief may be granted under this clause, the state court's decision must be more than merely wrong; it must be objectively unreasonable. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.),

*cert. denied*, 125 S.Ct. 809 (2004). The Ninth Circuit describes this as a "daunting standard," which will "be satisfied in relatively few cases." *Id*. at 1000.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002)), *cert. denied*, 541 U.S. 1037 (2004). When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not *de novo*. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). Instead, this court considers whether the state decision was "objectively reasonable" after conducting an independent review of the record. *Id*.

Under clearly established Supreme Court law, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance fell outside the wide range of reasonable professional assistance and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

A petitioner must identify the acts or omissions of counsel that petitioner alleges were not the result of reasonable professional judgment. *Id*. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. *Id*.

If counsel's performance is found to be deficient, any deficiencies must be prejudicial to the defense in order to constitute ineffective assistance of counsel. *Id*. at 691. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Here, Petitioner's trial counsel knew Detective Visser was willing to testify on Petitioner's behalf about his physical appearance at the time of the robbery. Trial counsel, however, chose not to call Detective Visser as a witness. Instead, he told Detective Visser his testimony would not be necessary, and explained to Petitioner that it was "an open and shut case."

The only evidence against Petitioner in connection with this robbery was Mr. Davis' testimony. Unlike the other robberies, for which Petitioner admitted his guilt, there were no fingerprints or other corroborating evidence. Davis' description of Petitioner,

and the circumstances under which he encountered him, varied substantially over time from the date of the robbery to trial. The one detail on which he did not waver, however, was the length of Petitioner's hair. Davis consistently described the perpetrator's hair as long and greasy. It is apparent from the evidence, however, that Detective Visser would have testified that Petitioner's hair was not long and greasy. Had trial counsel called Detective Visser as a witness, it is highly likely his testimony about Petitioner's appearance at the time of the robbery would have successfully impeached Davis' identification, and would have created a reasonable probability that the outcome of the trial would have been different.

As noted, the PCR trial judge rejected this argument out of hand, concluding that he would not second-guess the criminal trial judge. The PCR trial judge did not, however, discuss the variance in Davis' descriptions of the perpetrator of the crime, the fact that photographic evidence disputed Davis' description of the perpetrator's hair as "long and greasy," or the consideration the criminal trial judge would have given Detective Visser's testimony. In light of the evidence before him, the decision denying state post-conviction relief was based upon an objectively unreasonable determination of the facts in the state record.

Moreover, because there is a reasonable probability that inclusion of Detective Visser's testimony at the criminal trial

would have changed the outcome, the PCR trial judge unreasonably applied *Strickland*'s ineffective assistance of counsel requirements to deny relief. Upon an independent review of the record, this Court concludes the PCR trial judge's denial of relief was objectively unreasonable. As such, Petitioner is entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

## CONCLUSION

For these reasons, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus. Respondent is hereby **ORDERED** to release Petitioner from custody and discharge him from all other adverse consequences of his conviction unless Petitioner is brought to retrial within ninety (90) days of the date the Judgment herein becomes final, plus any additional delay authorized by State law.

IT IS SO ORDERED.

DATED this   13th   day of January, 2006.


         /s/ Anna J. Brown
         ANNA J. BROWN
         United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KALVIN[1] BRUNELLE,

        Petitioner,

   v.

BRIAN BELLEQUE, Superintendent,
Oregon State Penitentiary Minimum,

        Respondent.

Civil No. 03-1027-BR

OPINION AND ORDER

     FRANCESCA FRECCERO
     Assistant Federal Public Defender
     101 SW Main Street, Suite 1700
     Portland, OR  97204

        Attorney for Petitioner

---

   [1] The court record lists Petitioner's name as "Calvin" based
on the spelling of his name in the original Petition.  Counsel for
Petitioner notes, however, that the correct spelling is "Kalvin."
Accordingly, the Clerk of the Court is DIRECTED to correct the
court record to reflect the accurate spelling of Petitioner's name.

**HARDY MYERS**
Attorney General
**YOULEE YIM YOU**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

        Attorneys for Respondent

**BROWN, Judge.**

Petitioner, an inmate at the Oregon State Penitentiary, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner committed a series of residential burglaries in North Portland in October of 1995.  He was arrested on October 24, 1995, and charged with five burglaries.  Petitioner admitted he committed four of the burglaries, but asserted his innocence of a robbery and residential burglary which occurred on October 12, 2005.

The victim of the October 12, 2005, robbery and burglary was Robert Davis, a 25-year old man who lived with his mother and stepfather.  At 8:30 p.m. that night, Davis and his mother pulled into the driveway of their home, and heard a bottle breaking on the side of the house.  Davis then saw someone trying to climb out a window by breaking the storm window from the inside.

Davis took his mother to a neighbor's yard, then ran back to his house. There, he saw a man climbing out of a different window of the house. The man was carrying a wooden rod that was three and one-half to four feet long. The man passed Davis in the driveway and raised the wooden rod at him. The man threatened Davis, and then fled. Davis pursued him through the neighborhood, but did not catch up to him before police, who had been called by the neighbor, stopped Davis.

It was dark outside when the incident occurred. Davis testified, however, that there were two yard lights in the driveway and a flood light on the garage which illuminated the entire driveway. Another light, located in a breeze way between the garage and house, had been unscrewed and set upon a table.

That night, Davis described the suspect to police as a white man with long, dark hair and a dark complexion, approximately 5'10" to 5'11" and 150 pounds. On November 2, 1995, a detective showed Davis a photographic throw-down that included a picture of Petitioner taken twelve days after the incident on October 24, 1995, when Petitioner was arrested. In that photograph, Petitioner has short hair. Davis told the detective that the suspect had longer hair. He described the suspect's hair as "long, shoulder-length, greasy." The detective instructed Davis that some characteristics may have changed, and that he should

make his identification based on his recollection of the suspect's face.  Davis picked out Petitioner's photo.

At trial to the court, Davis pointed to Petitioner as the man he saw on October 12.  Davis also testified that Petitioner's hair had been longer at the time of the burglary.  He said the suspect's hair was "shoulder length," and "kind of laying on his shoulders."

On cross-examination, Davis admitted that he told the responding police officer that he only was able to see the suspect's face when he turned in the driveway.  In court, however, he said he could always see the suspect's face, and it simply became brighter as the suspect approached him, because of the lighting.  Davis denied he told the responding officer the suspect weighed only 150 pounds.

Petitioner's attorney called the responding police officer, Officer Seid, as a witness.  Officer Seid testified that Davis told him he first confronted the suspect approximately four blocks from the residence, after pursuing him.  Officer Seid also confirmed Davis told him the suspect weighed approximately 150, not 180 pounds.  Petitioner's attorney also offered Multnomah County booking photographs of Petitioner from arrests on June 17, 1995, and October 24, 1995, both of which showed Petitioner with short hair.

In closing, the prosecutor argued the court should accept Davis' identification of Petitioner because the inconsistencies in his statements were insignificant and did not indicate unreliability. As to the booking photographs, the prosecutor argued they did not establish how long Petitioner's hair was on the date of the burglary and "whether or not he had a hair cut in between, we don't know, or a haircut in between the 12th and the 24th, we don't know."

Petitioner's attorney countered that the Davis burglary did not fit the *modus operandi* of the other burglaries Petitioner admitted to committing. Counsel also pointed out the inconsistencies in Davis' descriptions, emphasized that the photographic evidence proved Petitioner did not have long hair on October 12, and stated that the "haircut theory is preposterous."

The trial judge found Petitioner guilty. Petitioner did not directly appeal.

Petitioner did seek state post-conviction relief ("PCR"). He claimed he was denied effective assistance of counsel on the basis that his trial attorney failed to investigate the facts relating to the Davis incident, and failed to subpoena and call as a witness Clark County, Washington Sheriff's Detective John Visser, who would have impeached Davis' identification.

On September 18, 2001, Senior Judge George Van Hoomissen conducted a trial in the PCR proceeding. Evidence presented at

the PCR trial included the criminal trial transcript, Petitioner's deposition, and the testimony of Detective Visser.

Detective Visser testified he had worked for the Sheriff of Clark County as a detective for ten years. He testified he had known Petitioner since 1986, when Petitioner was in the juvenile detention center in Clark County and Visser was a juvenile detention officer. Detective Visser maintained contact with Petitioner over the years, and Petitioner was once arrested for attempting to enter Visser's house unlawfully. Detective Visser had worked with Petitioner's family in an effort to get Petitioner into a drug-treatment program.

Detective Visser testified that he personally knew Petitioner had short hair throughout September and October 1995. Recalling a specific visit, Visser testified that "approximately ten to twelve days prior to [Petitioner's] arrest on October 24, 1995," Visser had gone to see Petitioner. When asked to describe Petitioner's hairstyle at the time, Visser said he could "do better than that," and offered the October 24, 2005, booking photograph introduced at trial. Detective Visser said that the hairstyle shown in the photograph was Petitioner's hairstyle at the time he saw him around October 12, 1995, except for twelve days' growth. He testified that he had never known Petitioner to have "long, dark, greasy hair."

Detective Visser also testified about his contact with Petitioner's trial counsel. He testified that he talked to the attorney about Petitioner's hairstyle on the date of the alleged robbery, and twice told counsel he was willing and available to testify to those facts on Petitioner's behalf. The trial attorney, however, never sent an investigator to speak to him, never served him with a subpoena, and never asked him to testify at trial. Instead, the trial attorney told Visser his testimony "wouldn't be necessary."

Petitioner also testified at the PCR trial that he asked his attorney to contact Detective Visser. The attorney told Petitioner they "weren't going to need him," and that it was "an open and shut case" against Petitioner.

At the PCR trial, the state did not call the trial attorney to testify, or submit an affidavit from him. The state's attorney argued Detective Visser's testimony would have been cumulative, because it would not have added anything to the evidence of the booking photograph from October 24, 1995.

The PCR trial judge denied relief. He did not enter formal findings of fact or conclusions of law. Instead, at the close of trial, Judge Van Hoomissen said:

THE COURT: . . . [I]n effect what you're asking this Court to do is to second guess the trial Judge who heard the evidence several years ago. Nothing you've

> presented this morning would warrant
> this Court in doing so.
>
> * * *
>
> The Court finds that the Petitioner has
> failed to sustain his burden of proof
> and therefore that the formal petition
> for post-conviction relief should be
> denied.

Petitioner appealed the denial of PCR court's decision. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

On July 29, 2003, Petitioner filed his federal petition for writ of habeas corpus. Petitioner initially alleged numerous claims for relief. In his Memorandum in Support of Petition for Habeas Corpus Relief, however, Petitioner presents argument solely upon his claim that trial counsel was constitutionally ineffective for failing to investigate the mistaken identity defense and failing to call a witness who would have significantly impeached the state's identity witness. Petitioner concedes the remaining claims are either procedurally defaulted or were the subject of state court decisions entitled to deference.

## DISCUSSION

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1172-75 (2003).

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000). An "unreasonable application of clearly established Federal law" occurs if a state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. *Williams*, 529 U.S. at 412; *Ramdass*, 530 U.S. at 166.

Under 28 U.S.C. § 2254(d)(2), this Court may also grant habeas relief if the state court's decision was based on an unreasonable determination of the facts in the state record. Before relief may be granted under this clause, the state court's decision must be more than merely wrong; it must be objectively unreasonable. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.),

*cert. denied*, 125 S.Ct. 809 (2004). The Ninth Circuit describes this as a "daunting standard," which will "be satisfied in relatively few cases." *Id*. at 1000.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002)), *cert. denied*, 541 U.S. 1037 (2004). When the state court does not issue an opinion or otherwise supply the reasoning for a decision, federal habeas review is not *de novo*. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). Instead, this court considers whether the state decision was "objectively reasonable" after conducting an independent review of the record. *Id*.

Under clearly established Supreme Court law, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance fell outside the wide range of reasonable professional assistance and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

A petitioner must identify the acts or omissions of counsel that petitioner alleges were not the result of reasonable professional judgment. *Id*. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. *Id*.

If counsel's performance is found to be deficient, any deficiencies must be prejudicial to the defense in order to constitute ineffective assistance of counsel. *Id*. at 691. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Here, Petitioner's trial counsel knew Detective Visser was willing to testify on Petitioner's behalf about his physical appearance at the time of the robbery. Trial counsel, however, chose not to call Detective Visser as a witness. Instead, he told Detective Visser his testimony would not be necessary, and explained to Petitioner that it was "an open and shut case."

The only evidence against Petitioner in connection with this robbery was Mr. Davis' testimony. Unlike the other robberies, for which Petitioner admitted his guilt, there were no fingerprints or other corroborating evidence. Davis' description of Petitioner,

and the circumstances under which he encountered him, varied substantially over time from the date of the robbery to trial. The one detail on which he did not waver, however, was the length of Petitioner's hair. Davis consistently described the perpetrator's hair as long and greasy. It is apparent from the evidence, however, that Detective Visser would have testified that Petitioner's hair was not long and greasy. Had trial counsel called Detective Visser as a witness, it is highly likely his testimony about Petitioner's appearance at the time of the robbery would have successfully impeached Davis' identification, and would have created a reasonable probability that the outcome of the trial would have been different.

As noted, the PCR trial judge rejected this argument out of hand, concluding that he would not second-guess the criminal trial judge. The PCR trial judge did not, however, discuss the variance in Davis' descriptions of the perpetrator of the crime, the fact that photographic evidence disputed Davis' description of the perpetrator's hair as "long and greasy," or the consideration the criminal trial judge would have given Detective Visser's testimony. In light of the evidence before him, the decision denying state post-conviction relief was based upon an objectively unreasonable determination of the facts in the state record.

Moreover, because there is a reasonable probability that inclusion of Detective Visser's testimony at the criminal trial

would have changed the outcome, the PCR trial judge unreasonably applied *Strickland*'s ineffective assistance of counsel requirements to deny relief. Upon an independent review of the record, this Court concludes the PCR trial judge's denial of relief was objectively unreasonable. As such, Petitioner is entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

## CONCLUSION

For these reasons, the Court conditionally **GRANTS** the Petition for Writ of Habeas Corpus. Respondent is hereby **ORDERED** to release Petitioner from custody and discharge him from all other adverse consequences of his conviction unless Petitioner is brought to retrial within ninety (90) days of the date the Judgment herein becomes final, plus any additional delay authorized by State law.

IT IS SO ORDERED.

DATED this ___13th___ day of January, 2006.


_____/s/ Anna J. Brown_____
ANNA J. BROWN
United States District Judge